UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮<br><br>            Plaintiff,<br><br>    v.<br><br>CITY OF BOSTON,<br>BOSTON POLICE DEPARTMENT,<br>AND INDIVIDUAL OFFICERS<br>In their official capacities<br><br>Serve: Eugene L. O'Flaherty<br>       Corporation Counsel, City of Boston<br>       1 City Hall Square<br>       Room 615<br>       Boston, MA 02201<br><br>            Defendants. | Civil Case No. _____<br><br>**COMPLAINT**<br>**(Jury Trial Demanded)** |

## COMPLAINT

### Introduction

Plaintiff Jane Doe[1] brings this action under Title VII of the Civil Rights Act of 1964, and 42 U.S.C. § 1983 for damages and relief against the Boston Police Department ("BPD" or "Department"), as well as the City of Boston which controls BPD. Ms. Doe was a well-respected police officer with BPD—one of the first few Asian American women in the Department and the first promoted (upon application) to the Special Operations Division—when she was violently raped by a fellow officer. The Department has since responded by insisting that her report of

---

[1] Ms. Doe seeks to file an anonymous complaint, due to safety concerns and the highly sensitive nature of this matter. *See* Pl.'s Mot. for Leave to Proceed Under a Pseudonym.

1

having been raped was nothing more than her "opinion," retaliating against her, and ruining her reputation within the Department so severely that she eventually resigned.

Even after Ms. Doe left BPD and searched for employment in the Washington, D.C., metropolitan area, the Department maintained a campaign of retaliation and harassment against her, which continues to this day. For nearly a decade, virtually every single time Ms. Doe applies for another job, the Department continues its campaign by either refusing to respond to background check requests or sending false information about Ms. Doe. At first, the Department deliberately refused to respond to background check inquiries from fellow law enforcement agencies. Then, it purposefully engaged in contact with these agencies—many of which are based in D.C.—and sent negative responses containing false information. Among other misrepresentations, BPD has told prospective D.C. employers that Ms. Doe was essentially fired from BPD (she resigned), that there are charges sustained against her (there are not), and that Ms. Doe's case was not properly reported to the authorities (it was). At one point, Ms. Doe successfully obtained employment in Washington, D.C.; however, BPD then tipped off a Washington Post reporter about her alleged "misconduct" and falsely added her name to a list of officers who had been terminated, which led that reporter to alert her employer. Ms. Doe has applied for more than one hundred (100) law enforcement agency positions, many of which considered the false information provided to them by BPD. Even as Ms. Doe tries to move on, BPD continues its pattern of retaliatory behavior.

Defendants violated Title VII and deprived Ms. Doe of her First Amendment right against retaliation when they deliberately sent negative, false information about her employment history in retaliation against Ms. Doe for reporting sexual assault, harassment, and retaliation as well as for filing lawsuits and grievances against Defendants. Finally, Defendants caused severe,

intentional emotional distress when they either sent false job references or refused to cooperate with background investigations, thereby preventing Ms. Doe from obtaining employment.

## Parties

### *Plaintiff*

1. Plaintiff, Ms. Jane Doe, is a female and a resident and citizen of Rhode Island. Between July 2014 and August 2020, Ms. Doe resided in Northern Virginia and worked in the Washington, D.C., metropolitan area. During that time, she applied to more than one hundred (100) law enforcement agency positions—over twenty (20) of which were based in the District of Columbia—and the Boston Police Department continuously harassed and retaliated against her.

2. Ms. Doe was an employee of Defendant BPD within the meaning of 42 U.S.C. § 2000e(f) from 2007 to 2014.

3. Ms. Doe grew up in the Boston area. During her last year of college, she sat for the Massachusetts civil service exam. A couple of years after graduation, she accepted a job with the Boston Police Department.

4. Less than three years after beginning employment and completing the six-month Police Academy training, Ms. Doe applied and successfully competed for transfer into the elite Special Operations Division.[2]

---

[2] Ms. Doe was accepted into the Special Operations Division – MOP (Mobile Operations Patrol) with special consideration for SWAT by former Boston Police Commissioner Ed Davis and BPD Tactical Commander (former Deputy Superintendent) Thomas Lee, after only less than two years patrol experience—an exception to the customary three year requirement for specialized units, which is only made when an officer is determined to be an asset to the unit.

*Defendants*

5. Defendant Boston Police Department is a municipal government agency responsible for public safety in Boston, Massachusetts.

6. Boston Police Department is an employer within the meaning of U.S.C. § 2000e(b). Boston Police Department is governed by the Massachusetts General Laws.[3]

7. Ms. Doe ended her employment with Defendant Boston Police Department in 2014 because of harassment and retaliation. She then moved to Northern Virginia to begin employment in the Washington, D.C., metropolitan area.

8. Defendant City of Boston controls, operates, and manages Defendant Boston Police Department.

9. Defendants Officers are employees of the Boston Police Department. They report to Defendants Ranking Officers.[4]

**Jurisdiction**

10. The Court has subject matter jurisdiction under 42 U.S.C.A. § 2000e-5 because the Plaintiff brings claims to vindicate rights guaranteed under Title VII. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff brings claims under 42 U.S.C. § 1983 to vindicate rights guaranteed by the Constitution of the United States. The Court has supplemental jurisdiction to adjudicate Plaintiff's claims arising under the laws of the District of Columbia pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy.

---

[3] MASS. GEN. LAWS ANN. ch. 31, § 58 (West 2020).
[4] Ms. Doe does not know the names of the individual officers who sent the negative employment information to her prospective employers. Upon discovery of that information, Ms. Doe will amend the complaint.

11. The actions that form the basis of this claim were directed at places of employment within the District of Columbia. During her residence in Northern Virginia from 2014 to 2020, Plaintiff applied to over twenty (20) positions with agencies that are based in the District of Columbia. BPD purposefully engaged in contact with these D.C. employers and made negative statements in writing and otherwise about the Plaintiff leading to the denial of her applications.

12. The Plaintiff exhausted her administrative remedies as required under 42 U.S.C.A. § 2000e-5 by filing her retaliation claim against Defendants to the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity commission. On July 16, 2020, Plaintiff received a letter from MCAD affirming the dismissal of Plaintiff's claim. Plaintiff timely filed this action within ninety (90) days of receiving this letter.

## Venue

13. Venue is proper because Plaintiff worked in the District of Columbia and applied for jobs in the District. Defendants' actions, which form the basis of this claim, were directed at D.C. employers and prevented Ms. Doe from filling positions with agencies that are based in D.C.

## Factual Allegations

14. The Boston Police Department has subjected Ms. Doe to wrongful discrimination.

15. Specifically, Ms. Doe has been subjected to harassment and retaliation in response to her good faith reporting of violent sexual assaults that she endured while employed with the Boston Police Department at the hands of a fellow officer.

16. When Ms. Doe began her career at the Department in 2007, she was one of a few women of Asian descent.

17. Ms. Doe experienced explicit sexism. She was told that to work as a female police officer, she must be either a bitch or a lesbian and that she had to "be careful" with her male colleagues. During academy training in 2007, Ms. Doe's academy instructors warned her to make sure that her hair and breasts did not distract male trainees.

18. Despite the pervasive culture of sexism at the Boston Police Department, Ms. Doe worked hard and did well. She was promoted to the Special Operations team in September 2009.

19. At no point in her employment with BPD did Ms. Doe's honesty or integrity come into question.[5]

20. While in the application and transfer process to the Special Operations Division, Ms. Doe attended a firearms competition with other Special Operation officers.

21. During the competition in late August 2009, Ms. Doe was violently and repeatedly raped by a fellow Boston Police Department officer.

---

[5] On September 25, 2020, Suffolk County District Attorney Rachael Rollins released a "Brady" list of 136 law enforcement officers with credibility issues. The listed officers, including fifty-four (54) current or former BPD officers, have engaged in, or been accused of, problematic misconduct that the DA's office would legally need to disclose to the defense. Ms. Doe is not on this list. *See Suffolk County DA LEAD Database - 9.25.20*, https://docs.google.com/spreadsheets/d/1FzZNmbWDfH_qjvQpACU3oS5PeEfHXW0uhTkNpHV3T1g/edit#gid=1556619442 (last visited Oct. 1, 2020); Sean Philip Cotter, *Rachael Rollins' Police Watch List Includes 54 Boston Cops, Plus Richard McKeon, Leigha Genduso*, BOSTON HERALD (Sept. 26, 2020, 4:55 PM), https://www.bostonherald.com/2020/09/26/rachael-rollins-police-watch-list-includes-54-boston-cops-plus-richard-mckeon-leigha-genduso/.

22. After returning to Boston, Ms. Doe reported the assaults along with subsequent assaults, threats, and harassment to her union representative, Paul Downey, who then reported it to her supervisors at the Department in September 2009.

23. Instead of addressing the perpetrator, the Department further punished Ms. Doe, the victim.

24. In September 2009, immediately after her reporting, Ms. Doe was told to stay home and treat her time off as a paid vacation; she was later forced to use sick leave while BPD refused to allow her to return to work for nearly a year.

25. BPD took Ms. Doe's personal property of significant monetary value, including a number of personal firearms and accessories, and has yet to return them. BPD also threatened to terminate her license to carry if she were to insist on their return.

26. When Sexual Assault Unit detectives, Lieutenant Detective George Juliano and Sergeant Detective Hamilton, spoke with Ms. Doe about her reported sexual assaults, they warned her not to continue to seek justice. Upon information and belief, during a preliminary interview with the detectives, Lieutenant Juliano told Ms. Doe that proceeding with her claim would be futile and only succeed in bringing shame on her family.

27. The Department further punished Ms. Doe by requiring that she see a psychiatrist employed by the Department, Marcia Scott. Upon information and belief, rather than treating Ms. Doe, Ms. Scott asked why an Asian woman like Ms. Doe would want to be a police officer and said Ms. Doe was Korean, even though Ms. Doe had told Ms. Scott that her ethnic heritage was Chinese. In accordance with Ms. Scott's recommendation, Defendant BPD did not allow Ms. Doe to return to work for nearly a year, despite her dutifully meeting with Ms. Scott six times in the two months after the rape, citing

clearance had to come from the Department's in-house legal counsel, rather than from a medical professional.

28. Upon information and belief, the same psychiatrist cleared the rapist to return to work less than three months after Ms. Doe's reporting of having been raped.

29. The Department refused to allow Ms. Doe to return to work, despite the fact that, upon information and belief, at least three different medical professionals—including an independent psychiatrist hired by the Department, a psychologist hired by the police union, and a psychologist hired by Ms. Doe—stated after evaluating Ms. Doe that she had no medical conditions barring her from returning to work.

30. In the months following Ms. Doe's reporting, the rapist frequently drove his vehicle to Ms. Doe's street and parked outside her residence. Upon information and belief, the rapist had no reason to be on Ms. Doe's street other than to intimidate her and her family.

31. Upon information and belief, the Boston Police Department was aware of the rapist's frequent drives to Ms. Doe's street, yet it continued to employ him in his usual capacity and did nothing about this behavior.

32. Even though Sexual Assault Unit investigators found no evidence contradicting Ms. Doe's claims of having been raped by a fellow officer, years later, BPD accused Ms. Doe of violating its "Statement of Opinion" policy, suggesting that her reporting of having been raped was nothing more than her "opinion."[6]

---

[6] BPD's "Statement of Opinion" policy provides that "[e]mployees shall not publicly criticize or ridicule the Department, its policies, or other employees by speech, writing, or expression in any other manner when such speech, writing or other expression is defamatory, unlawful, interferes with the maintenance of discipline, or is made with reckless disregard of its truth or falsity." Sec. 19, Boston Police Department Rules and Procedures Rule 102 (Feb. 11, 2003), https://static1.squarespace.com/static/5086f19ce4b0ad16ff15598d/t/56a28e2440667a9ab03ff147/1453493796591/Rule_102_Amended.pdf. The Department has therefore wrongly insinuated that

33. In the months and years after Ms. Doe's reporting, she applied for other jobs in law enforcement.

34. Ms. Doe sent out her first job application in 2010, while she was still employed with the Boston Police Department (but had been transferred out of the Special Operations Division and prohibited from doing the type of law enforcement work she had trained for).

35. Ms. Doe was motivated to apply for other employment because the Boston Police Department would not allow her to do the type of law enforcement work that she had trained for and that she had grown to love. Ms. Doe was also motivated to find employment outside of Boston because her assailant continued to physically threaten her, driving to her block and parking his truck in front of her home.

36. Between 2010 and the present, Ms. Doe applied to seventy-one (71) agencies.

37. Ms. Doe applied to multiple positions within some agencies and applied to some agencies more than once, bringing the total number of job applications she submitted to one hundred and thirty-five (135). One hundred and eleven (111) of these applications were submitted to law enforcement agencies. Over twenty (20) of these positions were based in the District of Columbia.

38. The Boston Police Department was nonresponsive when many potential employers reached out for reference information regarding Ms. Doe.

39. When the Boston Police Department did respond to requests for references, it was to provide negative, false information.

---

Ms. Doe's statements about the events surrounding her assault are "defamatory, unlawful," or that they "interfere[] with the maintenance of discipline, or [are] made with reckless disregard of its truth or falsity." *See id.*

40. In one instance, for example, Ms. Doe applied to a police supervisor position for a community college police department. Ms. Doe received a tentative offer from the police department, but after receiving negative, false information from the Boston Police Department, the offer was rescinded.

41. In another instance, Ms. Doe applied to a criminal investigator position for the Department of Homeland Security (DHS), a federal agency based in D.C. Ms. Doe received a tentative offer from DHS in 2017, but after a background investigation during which BPD provided false information, DHS told Ms. Doe that she would "be found unsuitable for . . . and possibly denied examination for, and appointment to, all positions with DHS" for a period of several years. After further investigation, the agency wrote to Ms. Doe, stating that her alleged "conduct indicate[d] potential for behavior that could adversely impact [her] employment performance, as well as [the agency's] ability to fully and effectively carry out its law enforcement mission." Based upon false information provided by BPD, DHS alleged that Ms. Doe had violated sixty-five (65) rules while at BPD and supported its finding of unsuitability by citing this alleged "misconduct in employment," ranging from untruthfulness to violating orders, as the only reason DHS rescinded its offer. This false negative referral has interfered with Ms. Doe's subsequent employment.

42. Ms. Doe did not know about the Department's lack of responsiveness, nor did she know specifically why she was unsuccessful in finding other law enforcement employment, until about 2017.

43. On another occasion, Ms. Doe successfully obtained employment in D.C. However, BPD then falsely informed a Washington Post reporter that she had essentially been terminated

from BPD, which led the reporter to alert Ms. Doe's D.C. employer, jeopardizing her employment.

44. On September 25, 2020, Suffolk County District Attorney Rachael Rollins released a "Brady" list of 136 law enforcement officers—including fifty-four (54) current or former BPD officers—who have engaged in, or been accused of, misconduct that discounts their credibility as prosecutorial witnesses and that the DA's office would legally need to disclose to the defense. Ms. Doe has performed well in past employment and is not on this list; yet, BPD falsely informed DHS and other agencies that Ms. Doe had engaged in "misconduct," including untruthfulness, while at BPD.

45. Upon information and belief, the large presence of BPD officers on the DA's Brady list supports a strong inference that the Department's practice of providing false information is not an individual case but a Department-wide problem.

46. Ms. Doe's failure to find subsequent long-term law enforcement work hindered her professional and personal life.

47. Many law enforcement agencies have maximum entry ages, and Ms. Doe recently reached one of these cutoffs. For example, in May 2020, Ms. Doe turned thirty-seven (37) years old, the maximum entry age for law enforcement employment with the Federal government.

48. Ms. Doe and her husband were forced to sell their condominium in Boston when they left the city in order for Ms. Doe to pursue other employment. They have not yet been able to recoup the equity they lost since they sold their home.

49. Ms. Doe's academic work has also been delayed by her extended job search. She is a PhD student with only her dissertation to complete. The hours she has spent applying to

jobs are hours she could have dedicated to research and writing for her doctoral dissertation.

50. The Boston Police Department's interference with Ms. Doe's job search means that not only has she been unable to earn the salary she would have earned had she stayed on at the Department,[7] but she has also been forced to spend hundreds of thousands of dollars on application fees and on airfare and hotels to attend examinations and interviews.

## COUNT I: CLAIMS UNDER TITLE VII

51. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

52. Defendant Boston Police Department continues to violate Title VII's prohibition against retaliation.

53. Plaintiff engaged in protected activity when she filed the administrative complaints against the Defendants for discrimination and retaliation.

54. Defendants' adverse actions continue to plague Ms. Doe to this day. In retaliation for her complaints filed against the Defendants, Defendants report negative, false information to prospective employers or other parties to negatively impact Ms. Doe's employment status

---

[7] Upon information and belief, officers who were part of Ms. Doe's academy class and now have thirteen (13) years of experience earn on average close to one hundred thousand dollars annually, more than their peers in many other American police departments. Many officers earn even more through overtime details. *See, e.g.*, Matt Rocheleau & Dugan Arnett, *Boston's Highest-Paid Worker: A Cop Accused of Payroll Abuse in 2017*, BOSTON GLOBE (June 17, 2020, 9:04 PM), https://www.bostonglobe.com/2020/06/17/metro/amid-defunding-debate-boston-police-payroll-surges-dozens-officers-earn-more-than-300k-year/ (reporting that the average pay for BPD employees in 2019 was $127,094); Jonathan Ng, *Boston Police Officers Were Highest Paid City Employees in 2018*, BOSTON HERALD (Feb. 23, 2019, 10:08 PM), https://www.bostonherald.com/2019/02/23/boston-police-officers-were-highest-paid-city-employees-in-2018/; Dalton Main & Blair Miller, *Boston Police Top City Payroll With Highest Salaries, But Why?* BOSTON 25 NEWS (Feb. 25, 2017 4:09 AM), https://www.boston25news.com/news/boston-salary-database-bpd/494077124/.

when she is employed. Defendants also delayed Ms. Doe's job application process when she first began applying for new jobs by refusing to submit the requested background information to prospective employers.

55. Prospective employers have notified Ms. Doe that Defendants sent negative background information to those employers. Upon request, Ms. Doe has received some of the content of the information provided by Defendants. The information includes unsubstantiated allegations of misconduct by Ms. Doe, inconsistent conclusions about charges against her, and false information regarding the circumstances under which she left the Boston Police Department.

56. The adverse actions taken by Defendants are the direct result of Ms. Doe's filing complaints against the Department. The content of the negative, false information provided by the Department is related to the sexual assault, harassment, and/or retaliation allegations lodged against the Department and employees of the Department by Ms. Doe.

## COUNT II: CLAIMS UNDER § 1983

57. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

58. Defendants Boston Police Department and City of Boston have deprived Plaintiff of her right to be free from retaliation under the First Amendment, giving rise to a claim under 42 U.S.C. § 1983.

59. Ms. Doe speaking out about BPD's treatment of her through litigation and administrative proceedings is a protected First Amendment activity.

60. Defendants were aware that Ms. Doe spoke out against their treatment of her. Ms. Doe has filed numerous EEOC complaints against Defendants. Ms. Doe has also testified in

front of the Boston City Council and the Massachusetts Association of Minority Law Enforcement Officers about her experience with the Boston Police Department. Upon information and belief, representatives of BPD, including then-Superintendent-in-Chief Daniel Linskey, witnessed Ms. Doe's testimony.

61. Defendants retaliated against Plaintiff for engaging in protected First Amendment activity by submitting false and negative job references to prospective employers.

## Liability of Individual Officers

62. Defendants Officers sent retaliatory information about Ms. Doe to prospective employers as well as third parties to interfere with her current employment at the time. Defendants Ranking Officers directed or otherwise encouraged Defendants Officers to submit information that misrepresented Ms. Doe's employment history with the Department.

63. Upon information and belief, Defendant Officers had knowledge about Ms. Doe's case.

64. Upon information and belief, Defendant Officers maintained a culture of retaliation against police officers who reported the conduct of other police officers.

65. Upon information and belief, Defendant Officers followed the directions or encouragement of ranking officers to send false information about Ms. Doe to prospective employers.

## Liability of Boston Police Department / City of Boston

66. Defendant Boston Police Department knew that Ms. Doe spoke out against the Boston Police Department's treatment of her after she reported having been raped and harassed by a fellow officer and retaliated against by others in the Department.

67. Upon information and belief, BPD maintains a practice of intimidation and retaliation against female police officers who report the inappropriate conduct of their fellow

officers. The discrimination of and hostile work environment for female employees of the Boston Police Department is well-documented. A recent report demonstrated complaints from numerous women about the Department maintaining a hostile work environment for female police officers.[8]

68. Ms. Doe made complaints to the EEOC and MCAD regarding the Department's retaliatory behavior. While working at the Department, Ms. Doe filed internal complaints about the Department's response to her sexual assault, harassment, and retaliation reports.

69. Upon information and belief, BPD knew that Ms. Doe resigned from the Department because of its inappropriate treatment of her.

70. Upon information and belief, officers within BPD admonished her for having reported on another officer, even if they believed the other officer to be a rapist. The other officers focused on Ms. Doe breaking the "blue wall of silence" rather than the rapist's offense. They expressed that no matter what, Ms. Doe should have kept quiet instead of reporting on a fellow officer.

71. On at least three separate occasions, BPD sent prospective employers information about Ms. Doe which it knows to be false. On other occasions, prospective employers notified Ms. Doe that they could not move forward with her application because BPD refused to respond to their requests for employment history information.

72. Defendant City of Boston, which controls the Boston Police Department, failed to adequately enforce policies and customs of the City with respect to its duty to former City employees.

---

[8] *See, e.g.*, Editorial, *Boston Police Gender Diversity Plan Needs an Overhaul*, BOSTON GLOBE (May 12, 2019, 7:01 PM), https://www.bostonglobe.com/opinion/editorials/2019/05/12/boston-police-gender-diversity-plan-needs-overhaul/Wznn9lEFOhxjFfbpnopB9K/story.html.

73. Upon information and belief, it is the policy of BPD to uphold the Constitution of the United States.

74. Upon information and belief, BPD policy prohibits the Department from retaliating against employees who have complained of harassment and discrimination.

75. The City of Boston is tasked with overseeing the enforcement of BPD policy.

## COUNT III: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

76. Plaintiff adopts and incorporates by reference paragraphs 1 through 50 above as if fully set forth herein.

77. Upon information and belief, Defendant Boston Police Department intentionally sent false information to prospective employers to prevent Ms. Doe from obtaining a job in law enforcement.

78. The City of Boston controls BPD. It is responsible for overseeing the policy and practices of BPD.

79. The Defendants' conduct is outrageous and offensive. The false information that Defendants sent to prospective employers include offensive information about her employment history. For example, in at least one instance, BPD indicated to a prospective employer that Ms. Doe resigned in lieu of termination because of her alleged misconduct. This is offensive because a resignation in lieu of termination is a term of art which denotes a termination with benefits. In fact, Ms. Doe resigned because the Department's behavior after her reporting of sexual assaults, harassment, and retaliation was so odious that she could no longer tolerate her work environment.

80. The Defendants' conduct has been so intolerable that Ms. Doe has essentially been barred from employment in law enforcement. Indeed, the only time when Ms. Doe could obtain

law enforcement employment were the two instances when those employers did not seek information from the Defendants.

81. The Defendants caused Ms. Doe severe financial and emotional distress. Ms. Doe has lost money applying for jobs and traveling for fruitless job examinations and interviews.

82. Ms. Doe has suffered severe stress in the job search. She cannot even seek treatment for the emotional distress because she is concerned that mental health treatment would adversely affect her employment in light of Defendants' false job references against her. Ms. Doe's family members continue to suffer emotionally as they worry about Ms. Doe's physical safety and her ability to retain employment.

## Prayer for Relief

WHEREFORE, Plaintiff respectfully asks that the Court:

ENTER JUDGMENT holding the appropriate Defendants jointly and severally liable to plaintiff for compensatory damages, punitive damages and other damages of no less than $3,000,000.00 (three million dollars) recoverable under 42 U.S.C.A. § 2000e-5 and 42 U.S.C. § 1983;

AWARD Plaintiff her costs and reasonable attorney's fees; and

GRANT such other and further relief as the Court deems just and proper.

Respectfully,

/s/ Aderson Francois

        Aderson Francois (D.C. Bar No. 798544)
        Civil Rights Clinic
        Georgetown University Law Center
        600 New Jersey Ave., NW, Suite 352
        Washington, D.C. 20001

        Phone: (202) 661-6721
        Email: aderson.francois@georgetown.edu

        *Attorney for Plaintiff*