UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CIVIL ACTION NO. 20-2948-CKK |
| | ) |
| CITY OF BOSTON, BOSTON POLICE | ) |
| DEPARTMENT and INDIVIDUAL OFFICERS, | ) |
| | ) |
|     Defendants. | ) |

**STATEMENT OF POINTS AND AUTHORITIES
<u>IN  SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Table of Contents ................................................................................................................ i

Table of Authorities ........................................................................................................... ii

I.  Introduction ............................................................................................................1

II.  Relevant Facts .........................................................................................................2

    A.  The Court May Consider The Final Agency Decision Of The Massachusetts Commission Against Discrimination In Resolving This Motion ........................................................................................................2

    B.  Relevant Facts Alleged In Complaint And From MCAD Decision ..................3

III.  Argument .................................................................................................................4

    A.  The Court Lacks Personal Jurisdiction Over Boston Defendants ........................4

        1.  Legal standards for personal jurisdiction ...............................................4

        2.  The Court lacks person jurisdiction over Boston Defendants under both D.C.'s long-arm statute and the Constitution ........................7

            a.  City of Boston and BPD are not "persons" to which D.C.'s long-arm statute applies..........................................7

            b.  There is no factual basis for this Court's personal jurisdiction over Boston Defendants under D.C.'s long-arm statute ...............................................................8

            c.  Personal jurisdiction over Boston Defendants would not comport with the requirement of constitutional due process ........................................................................12

    B.  The Case Should Be Dismissed For Improper Venue Or, Alternatively, Transferred to Massachusetts....................................................14

        1.  Venue is improper....................................................................................14

        2.  Alternatively, the case should be transferred to Massachusetts ........................................................................................16

IV.  Conclusion ............................................................................................................19

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

<u>Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.</u>,
    480 U.S. 102 (1987) ................................................................................................ 6,13

<u>Black v. City of Newark</u>,
    535 F.Supp.2d 163 (D.D.C. 2008) ............................................................................ 7

<u>Brit UW, Ltd. v. Manhattan Beachwear, LLC</u>,
    235 F. Supp. 3d 48 (D.D.C. 2017) ............................................................................ 5

<u>Calder v. Jones</u>,
    465 U.S. 783 (1984) .................................................................................................. 9

<u>Campo Band of Mission Indians v. United States</u>,
    No. 99-3375, 2000 U.S. Dist. LEXIS 7269, at *21-23 (D.D.C. 2000) ...................... 7

<u>Cannady v. Maryland</u>,
    2020 WL 3064441 (D.D.C. June 8, 2020) ................................................................ 7

<u>Capel v. Capel</u>,
    272 F. Supp. 3d 33 (D.D.C. 2017) .......................................................................... 11

<u>Cherdak v. Am. Arbitration Ass'n Inc.</u>,
    443 F. Supp. 3d 134 (D.D.C. 2020) ........................................................................ 14

<u>Crane v. Carr</u>,
    814 F.2d 758, 760 (D.C. Cir. 1987) .................................................................... 9, 11

<u>Dean v. Eli Lilly & Co.</u>,
    515 F.Supp.2d 18 (D.D.C. 2007) ............................................................................ 18

<u>D'Onofrio v. SFX Sports Grp., Inc.</u>,
    534 F. Supp. 2d 86 (D.D.C. 2008) ....................................................................... 5, 9

<u>E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.</u>,
    2020 WL 6158575 (D.D.C. Oct. 21, 2020) ............................................................. 9

<u>Earle v. D.C.</u>,
    707 F.3d 299 (D.C. Cir. 2012) ................................................................................. 3

<u>Edmond v. United States Postal Serv. Gen. Counsel</u>,
    949 F.2d 415 (D.C. Cir. 1991) ................................................................................. 5

<u>FC Inv. Grp. LC v. IFX Mkts., Ltd.</u>,
    529 F.3d 1087 (D.C. Cir. 2008) ......................................................................... 5, 10

<u>Fiorentine v. Sarton Puerto Rico, LLC</u>,
    2020 WL 5095486 (D.D.C. Aug. 29, 2020) ...................................................... 13, 14

<u>Forras v. Rauf</u>,
    812 F.3d 1102 (D.C. Cir. 2016) ........................................................................ 12, 15

<u>Freeman v. Fallin</u>,
    254 F. Supp. 2d 52 (D.D.C. 2003) .......................................................................... 14

<u>Greater Yellowstone Coalition v. Bosworth</u>,
    180 F.Supp.2d 124 (D.D.C. 2001) .......................................................................... 17

<u>GTE New Media Servs., Inc. v. Bell-South Corp.</u>,
    199 F.3d 1343 (D.C. Cir. 2000) ............................................................... 5, 6, 12, 14

<u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>,
    466 U.S. 408 (1984) ............................................................................................ 5, 13

Helmer v. Doletskaya,
 393 F.3d 201 (D.C. Cir. 2004) ............................................................ 9, 12, 16
Herbert v. Nat'l Acad. of Scis.,
 974 F.2d 192 (D.C. Cir. 1992) .................................................................... 2
Hohri v. United States,
 782 F.2d 227 (D.C. Cir. 1986) .................................................................... 2
Holder v. Haarmann & Reimer Corp.,
 779 A.2d 264 (D.C. 2001) ......................................................................... 11
Houlahan v. Brown,
 979 F. Supp. 2d 86 (D.D.C. 2013) ............................................................ 11
Hurd v. District of Columbia,
 864 F.3d 671 (D.C. Cir. 2017) .................................................................... 3
IMAPizza, LLC v. At Pizza Ltd.,
 334 F. Supp. 3d 95 (D.D.C. 2018) ............................................................ 12
Int'l Shoe Co. v. Washington,
 326 U.S. 310 (1945) ............................................................................... 6, 12
James v. Verizon Servs. Corp.,
 639 F. Supp. 2d 9 (D.D.C. 2009) .............................................................. 14
Jerome Stevens Pharms., Inc. v. FDA,
 402 F.3d 1249 (D.C. Cir. 2005) .................................................................. 2
Kabakova v. Office of Architect of Capitol,
 2020 WL 1866003 (D.D.C. Apr. 14, 2020) ............................................... 10
Keeton v. Hustler Magazine, Inc.,
 465 U.S. 770 (1984) ................................................................................... 9
Kopff v. Battaglia,
 425 F.Supp.2d 76 (D.D.C. 2006) ................................................................ 5
Lentz v. Eli Lilly & Co.,
 464 F.Supp.2d 35 (D.D.C.2006) ............................................................... 16
Marks v. Torres,
 576 F.Supp.2d 107 (D.D.C. 2008) ............................................................ 17
Naegele v. Albers,
 110 F. Supp. 3d 126 (D.D.C. 2015) ........................................................... 10
Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency,
 675 F.Supp.2d 173 (D.D.C. 2009) ............................................................ 17
Nicholson v. Mabus,
 257 F. Supp. 3d 6 (D.D.C. 2017) ................................................................ 3
Nuevos Destinos, LLC v. Peck,
 2019 WL 78780 (D.D.C. Jan. 2, 2019) ..................................................... 10
Pyrocap Int'l Corp. v. Ford Motor Co.,
 259 F.Supp.2d 92 (D.D.C. 2003) .............................................................. 18
Rendall-Speranza v. Nassim,
 107 F.3d 913 (D.C. Cir. 1997) .................................................................... 4
Saudi v. Northrop Grumman Corp.,
 273 F. Supp. 2d 101 (D.D.C. 2003) ........................................................... 16
Scolaro v. D.C. Bd. of Elections & Ethics,
 104 F. Supp. 2d 18 (D.D.C. 2000) .............................................................. 2

Steinberg v. Int'l Criminal Police Org.,
 672 F.2d 927 (D.C. Cir. 1981) ...................................................................... 5
Stewart Org., Inc. v. Ricoh Corp.,
 487 U.S. 22 (1988) ........................................................................................ 17
Tavoulareas v. Comnas,
 720 F.2d 192 (D.C. Cir. 1983) ....................................................... 10, 12, 16
Thompson Hine, LLP v. Taieb,
 734 F.3d 1187 (D.C. Cir. 2013) ............................................................ 10, 15
United States v. Ferrara,
 54 F.3d 825 (D.C. Cir. 1995) ......................................................................... 5
Walden v. Fiore,
 571 U.S. 277 (2014) ............................................................................... 12, 13
Williams v. GEICO Corp.,
 792 F. Supp. 2d 58 (D.D.C. 2011) .............................................................. 14
Williams v. Perdue,
 2020 WL 1892045 (D.D.C. Apr. 16, 2020) ................................................. 3
World-Wide Volkswagen Corp. v. Woodson,
 444 U.S. 286, 297 (1980) (1980) .......................................................... 7, 13

## Statutes

28 U.S.C. § 1391(b) ............................................................................... 1, 15, 16
28 U.S.C. § 1391(b)(1) ............................................................................. 15, 16
28 U.S.C. § 1391(b)(2) ............................................................................. 15, 16
28 U.S.C. § 1391(b)(3) ...................................................................................... 16
28 U.S.C. § 1391(c)(2) ...................................................................................... 15
28 U.S.C. § 1404(a) ............................................................................ 1, 16, 17, 19
42 U.S.C. § 1983 .............................................................................................. 3, 4
42 U.S.C. § 2000e-5(1) ........................................................................................ 3
D.C. Code § 12-301(8) ...................................................................................... 3, 4
D.C. Code § 13-421 .............................................................................................. 6
D.C. Code § 13-422 .......................................................................................... 5, 8
D.C. Code § 13-423 .......................................................................................... 5, 8
D.C. Code § 13-423(a) ................................................................................. 1, 6, 11
D.C. Code § 13-423(a)(4) .................................................................................... 8
Mass. Gen. L. c. 151B, § 9 .................................................................................. 3

## Rules

Fed. R. Civ. P. 12(b)(2) ............................................................................ 1, 2, 4, 14
Fed. R. Civ P. 12(b)(6) ......................................................................................... 2
Fed. R. Civ. P. 12(b)(3) ...................................................................................... 14
Fed. R. Civ. P. 45(c)(1)(A) ................................................................................. 18

## I.  <u>Introduction</u>.

By Motion filed herewith, pursuant to Fed. R. Civ. P. 12(b)(2) and (3), Defendants City of Boston, Boston Police Department ("BPD") and unnamed Individual Boston Police Officers (collectively "Boston Defendants") have moved to dismiss Plaintiff Jane Doe's Complaint in its entirety. The Court should dismiss Doe's Complaint – her *seventh* separate administrative agency or court complaint arising out of events associated with her 2014 resignation from BPD – because this Court lacks personal jurisdiction over Boston Defendants. Alleging only that Boston Defendants "directed" negative job references to prospective D.C. employers on a handful of occasions since March 2017, Doe fails to meet her burden of showing the substantial, purposeful contacts with D.C. necessary to support personal jurisdiction under the District of Columbia's long-arm statute, D.C. Code § 13-423(a), and the Constitution's due process clause.

The Court should also dismiss Doe's Complaint for improper venue under 28 U.S.C. § 1391(b). Doe does not, because she cannot, meet her burden of showing that Boston Defendants reside in D.C., a substantial part of the events giving rise to her claims occurred in D.C., or there is no other district in which this action might otherwise be brought.

Alternatively, if it does not dismiss this case, the Court should transfer it to the U.S. District Court for the District of Massachusetts. Such a transfer is warranted under 28 U.S.C. § 1404(a) "[f]or the convenience of parties and witnesses [and] in the interest of justice" because the relevant private and public interest factors – including the location of the parties, witnesses, acts complained about, evidentiary materials, and the forum most connected with the dispute – all weigh heavily in favor of a transfer to Massachusetts.

**II.**   <u>**Relevant Facts.**</u>

   **A.**   **The Court May Consider The Final Agency Decision Of The Massachusetts Commission Against Discrimination In Resolving This Motion.**

   It is long-settled that when considering a motion to dismiss for lack of jurisdiction under Rule 12(b)(2) the court "is not limited to the allegations of the complaint." <u>Hohri v. United States</u>, 782 F.2d 227, 241 (D.C. Cir. 1986), <u>vacated on other grounds</u>, 482 U.S. 64 (1987). Rather, "a court may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction to hear the case." <u>Scolaro v. D.C. Bd. of Elections & Ethics</u>, 104 F. Supp. 2d 18, 22 (D.D.C. 2000), citing <u>Herbert v. Nat'l Acad. of Scis.</u>, 974 F.2d 192, 197 (D.C. Cir. 1992); <u>see also</u> <u>Jerome Stevens Pharms., Inc. v. FDA</u>, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

   One jurisdictionally-relevant document outside the pleadings here is the final decision of the Massachusetts Commission Against Discrimination ("MCAD"), the state administrative agency that, in concert with the federal Equal Employment Opportunity Commission ("EEOC"), is charged with investigating complaints of employment discrimination and determining whether there exists probable cause that a violation of relevant statutes occurred. <u>See</u> www.mass.gov/ orgs/massachusetts-commission-against-discrimination. The MCAD decision dismissing Doe's underlying charge of discrimination and retaliation in this case for lack of probable cause, attached hereto as Exhibit A, provides important factual information integral to this motion's main contention, that is, that Doe has failed to meet her burden of showing that the Court has personal jurisdiction over Boston Defendants.

   Indeed, regardless of Rule 12(b)(2) jurisdictional issues, the Court is free to take judicial notice of, and fully consider the facts contained in, the MCAD decision. Even on Rule 12(b)(6) motions to dismiss for failure to state a legally viable claim, a court may consider "the facts

2

alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." Hurd v. District of Columbia, 864 F.3d 671, 678 (D.C. Cir. 2017) (alterations in original). A court may therefore consider administrative agency decisions "without converting the motion to a motion for summary judgment because these are official, public documents subject to judicial notice." Williams v. Perdue, No. 1:19-CV-02072 (TNM), 2020 WL 1892045, at *3 (D.D.C. Apr. 16, 2020) (citing Nicholson v. Mabus, 257 F. Supp. 3d 6, 8 (D.D.C. 2017)). The Court therefore can and should consider the MCAD decision, Exhibit A,[1/] in resolving this motion.

### B.    Relevant Facts Alleged In Complaint And From MCAD Decision.

Doe, a Rhode Island resident who lived in Northern Virginia from July 2014 to August 2020, was a BPD police officer between 2007 and 2014, when she resigned.[2/] Complaint at ¶¶ 1-2. On January 11, 2018, Doe filed a complaint of discrimination (sex/national origin) and retaliation with the MCAD, the underlying administrative charge on which Doe's Title VII claim is based. See Id. at ¶ 12; Exh. A at 1. Because an MCAD (and EEOC) complainant must file a charge within 300 days of the discriminatory/retaliatory events alleged, only those alleged events that took place on or after March 17, 2017 are timely.[3/] Exh. A at 3; see also, Mass. Gen. L. c. 151B, § 9; 42 U.S.C. § 2000e-5(1).

---

[1/] The MCAD decision consists of eight total pages, a two-paged "Dismissal and Notification of Rights" (numbered pages 1 and 2) and six-paged "Investigative Disposition" (numbered pages 1 through 6). Unless otherwise indicated, citations herein to Exhibit A refer to the page numbers of the Investigative Disposition portion of that decision.

[2/] The MCAD decision provides the factual background leading to Doe's resignation. See Exh. A at 2-3.

[3/] In addition to her Title VII claim, Doe asserts claims under 42 U.S.C. § 1983 and for intentional infliction of emotional distress ("IIED"). See Complaint ¶¶ 51-82. Doe's § 1983 claim is subject to D.C.'s residual three-year statute of limitations, see Earle v. D.C., 707 F.3d 299, 305 (D.C. Cir. 2012) (citing D.C. Code § 12-301(8)) and, given her October 19, 2020 Complaint filing, events before October 2017 are untimely as to that claim. As to Doe's IIED claim, stand-alone IIED claims are subject to the three-year limitations period of D.C. Code §

In her MCAD charge (and, therefore, in this case) Doe claims that:

From October 2013 through December 26, 2017, Complainant has been the subject of several negative job references that Respondent [BPD] gave her prospective employers…Several employers reported false and defaming information given by Respondent while others reported that Respondent would not cooperate with the background check. Approximately four of these incidents have occurred since March 2017 and Complainant believes these incidents are in retaliation for her past MCAD complaints and superior court litigation on similar matters. On December 6, 2017, Complainant discovered that Respondent, in an effort to negatively and prospectively impact Complainant's employment status, made false and derogatory statements to agents of the Washington Post for a story on police officers who were fired and then found employment elsewhere.

Exh. A at 1.[4/]

## III.   **Argument.**

### A.   **The Court Lacks Personal Jurisdiction Over Boston Defendants.**

#### 1.   **Legal standards for personal jurisdiction.**

Rule 12(b)(2) allows a court to dismiss an action when the court lacks personal

jurisdiction over the defendant. "Personal jurisdiction may be satisfied by either specific or

---

12-301(8), but when "intertwined" with another cause of action that has a more specific limitations period under D.C. law, that limitations period governs. See Rendall-Speranza v. Nassim, 107 F.3d 913, 920 (D.C. Cir. 1997). While Doe's IIED claim is plainly "intertwined" with her Title VII and §1983 claims, it remains unclear whether those claims have "more specific limitations periods under D.C. law." Suffice to say then – at best for Doe – her IIED claim may only be based on events within three years of her Complaint filing, that is after October 2017.

[4/] Doe's Court Complaint is a blatant attempt to obscure the fact that most all of the "retaliatory references" on which her case is based are untimely and the subject of two prior MCAD complaints (in 2010 and 2014) and three Massachusetts Superior Court cases (2012, 2016 and 2017). See Exh. A at 2-3. Without any specificity regarding when she applied for jobs in relation to the applicable March 17, 2017 300-day limitations cutoff – and in particular when she allegedly applied for the "over twenty" jobs with D.C.-based employers on which this Court's jurisdiction is ostensibly based – Doe's Complaint alleges only that "[b]etween 2010 and the present" she unsuccessfully applied for 135 total positions (111 of which were in law enforcement) with 71 different agencies, "over twenty" of which were located in D.C. Id. at ¶¶ 36-37; see also Id. at ¶ 33 ("In the months and years after [2009], she applied for other jobs in law enforcement."). As the MCAD decision makes clear, Doe's current claims in actuality rest on allegations of "approximately four" retaliatory references after March 2017 (some unstated number of which presumably involved D.C. employers) and a single alleged communication with a Washington Post reporter, presumably also located in D.C. See Exh. A at 1.

general jurisdiction." <u>Brit UW, Ltd. v. Manhattan Beachwear, LLC</u>, 235 F. Supp. 3d 48, 54 (D.D.C. 2017) (citing <u>D'Onofrio v. SFX Sports Grp., Inc.</u>, 534 F. Supp. 2d 86, 90 (D.D.C. 2008)). The plaintiff bears the burden of establishing that a court has personal jurisdiction over the defendant. <u>See</u> <u>FC Inv. Grp. LC v. IFX Mkts., Ltd.</u>, 529 F.3d 1087, 1091 (D.C. Cir. 2008).

In D.C., federal courts determine whether personal jurisdiction may be exercised "by reference to District of Columbia law." <u>United States v. Ferrara</u>, 54 F.3d 825, 828 (D.C. Cir. 1995). "A District of Columbia court may exercise personal jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its principal place of business in, the District of Columbia as to any claim for relief." D.C. Code § 13-422. Exercise of this so-called "general jurisdiction" requires that the defendant's contacts within the forum be "continuous and systematic" in order for the defendant to be forced to defend a suit arising out of any subject matter unrelated to the defendant's activities within the forum. <u>See</u> <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415-16 (1984). Thus, general jurisdiction "sets a high bar." <u>D'Onofrio</u>, 534 F. Supp. 2d at 90 (citing <u>Helicopteros</u>, 466 U.S. at 415-16).

Alternatively, D.C.'s federal courts may exercise "specific jurisdiction" to entertain controversies based on acts of a defendant that touch and concern the forum." <u>Kopff v. Battaglia</u>, 425 F.Supp.2d 76, 81 (D.D.C. 2006) (citing <u>Steinberg v. Int'l Criminal Police Org.</u>, 672 F.2d 927, 928 (D.C. Cir. 1981)). To determine whether it may exercise specific jurisdiction over a particular defendant, a court must engage in a two-part inquiry. First, the court must determine that D.C.'s long-arm statute, D.C. Code § 13-423, authorizes jurisdiction. <u>See</u> <u>GTE New Media Servs., Inc. v. Bell-South Corp.</u>, 199 F.3d 1343, 1347 (D.C. Cir. 2000). <u>See</u> <u>also</u> <u>Edmond v. United States Postal Serv. Gen. Counsel</u>, 949 F.2d 415, 424 (D.C. Cir. 1991) (even when subject matter jurisdiction is predicated on federal question, plaintiffs must rely on the D.C. long-arm

statute to assert personal jurisdiction over out-of-district defendants). The long-arm statute

provides the ways in which the Court may obtain specific jurisdiction over a "person,"[5/]

providing in (potentially) relevant part:

> A District of Columbia court may exercise personal jurisdiction over a person…as to a claim for relief arising from the person's –
>
> (1)  transacting any business in the District of Columbia;
> (2)  contracting to supply services in the District of Columbia;
> (3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;
> (4)  causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;
> (5)  having an interest in, using, or possessing real property in the District of Columbia….

D.C. Code § 13-423(a). Importantly, where jurisdiction is based solely on the D.C. long-arm

statute, "only a claim for relief arising from acts enumerated in this section may be asserted

against [the defendants]." Id.

Second, the court must find that exercise of jurisdiction comports with the requirements

of constitutional due process. See GTE New Media Servs., 199 F.3d at 1347. This determination

turns on whether a defendant's "minimum contacts" with D.C. establish that "the maintenance of

the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v.

Washington, 326 U.S. 310, 316 (1945) (internal citation and quotation marks omitted). Such

minimum contacts must arise from some act by which the defendant "purposefully avails"

himself of the privilege of conducting activities within D.C., thus invoking the "benefits and

protections of its laws." Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty., 480 U.S. 102,

---

[5/] The long-arm statute defines "person" as "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity…." D.C. Code § 13-421.

109 (1987). Put differently, courts must ensure that the "defendant's conduct and connection

with the forum State are such that he should reasonably anticipate being haled into court there."

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

> **2.     The Court lacks personal jurisdiction over Boston Defendants under both D.C.'s long-arm statute and the Constitution.**

> **a.     City of Boston and BPD are not "persons" to which D.C.'s long-arm statute applies.**

As this Court has repeatedly held, the institutional Boston Defendants – City of Boston

and BPD – are not "persons" to which D.C.'s long-arm statute applies in the first place. See, e.g.,

Cannady v. Maryland, No. 1:19-CV-3822-RCL, 2020 WL 3064441, at *2 (D.D.C. June 8, 2020)

(holding D.C.'s long-arm "statute does not permit courts to exercise jurisdiction over states or

cities because neither are 'persons' over which the statute authorizes jurisdiction. [Therefore,]

Maryland and Baltimore are not persons that fall within the District of Columbia's long-arm

statute.") (internal citations omitted); Black v. City of Newark, 535 F.Supp.2d 163, 166 (D.D.C.

2008) (holding "as a matter of law, [city of] Newark[, New Jersey] is not a 'person' under the

statute"); Campo Band of Mission Indians v. United States, No. 99-3375, 2000 U.S. Dist. LEXIS

7269, at *21-23 (D.D.C. 2000) (concluding city of San Diego, California not subject to D.C.'s

long-arm statute).

Just like Baltimore, Newark and San Diego, the City of Boston is not a "person" subject

to personal jurisdiction under D.C.'s long-arm statute and should be dismissed from this case for

this reason alone. And, as Doe readily acknowledges, "Defendant City of Boston controls,

operates, manages Defendant Boston Police Department" (Complaint at ¶ 8), and is therefore one

and the same with BPD. See also Id. at 1 ("the City of Boston…controls BPD"); ¶ 72 ("City of

Boston…controls the Boston Police Department"); ¶ 75 ("The City of Boston is tasked with

overseeing the enforcement of BPD policy."); ¶ 78 ("The City of Boston controls BPD. It is responsible for overseeing the policy and practices of BPD."). Thus, as Doe herself affirmatively (and correctly) alleges, City of Boston and BPD are in essence a single municipal entity and, therefore, not subject to the long-arm statute.

> **b.     There is no factual basis for this Court's personal jurisdiction over Boston Defendants under D.C.'s long-arm statute.**

As to the unnamed individual Defendant BPD officers (and even were City of Boston and BPD "persons" to which the long-arm statute is applicable), there is simply no factual support for personal jurisdiction under D.C.'s long-arm statute. Having no basis for general jurisdiction – Doe does not and cannot claim that Boston Defendants are domiciled in, organized under the laws of, or maintain a principal place of business in D.C. (see D.C. Code § 13-422) – the Complaint relies on specific jurisdiction. See § 13-423.

To that end, Doe alleges that Boston Defendants' "actions, which form the basis of this claim [sic], were directed at D.C. employers and prevented Ms. Doe from filling positions with agencies that are based in D.C." Complaint at ¶ 13; see also Id. at ¶ 11 ("The actions that form the basis of this claim [sic] were directed at places of employment within the District of Columbia."). Thus, the Complaint attempts to base personal jurisdiction on § 13-423(a)(4), that is, Boston Defendants' allegedly "causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia…."[6/]

> In order to exercise jurisdiction over a non-resident defendant pursuant to subsection (a)(4), the defendant must have caused tortious injury within the District and one of the "plus factors" in that subsection must also be present. Those "plus factors" are: (1)

---

[6/] To the extent that Doe nevertheless attempts to claim personal jurisdiction under one or more of the long-arm statute's other subsections, Boston Defendants address them below.

regularly doing or soliciting business in the District; (2) engaging in any other persistent course of conduct in the District; or (3) deriving substantial revenue from goods used or consumed, or services rendered, in the District of Columbia. Moreover, the requisite plus factor must be 'separate from and in addition to the in-state injury.' Crane[v. Carr], 814 F.2d [758,] 762 [(D.C. Cir. 1987)].

D'Onofrio, 534 F. Supp. 2d at 93.

Doe's claim to personal jurisdiction under subsection (a)(4) fails. First, subsection (a)(4) is inapplicable because the Complaint is based on the theory that Boston Defendants directed negative job references to prospective D.C. employers, which retaliatorily precluded Doe's employment therewith. This alleged injury was experienced by Doe – who lived and therefore suffered the injury in Northern Virginia – not by the employers located in D.C. who rejected her applications for employment. See Complaint at ¶ 11. As such, there was no alleged "tortious injury within the District" and subsection (a)(4) does not apply. See, e.g., Helmer v. Doletskaya, 393 F.3d 201, 209 (D.C. Cir. 2004) (declining to exercise personal jurisdiction over plaintiff's fraud claim because, despite his assertion of D.C. domicile, the cause of his injuries occurred in Russia, where he lived and where his girlfriend had used his credit cards and purchased and registered in her name a Moscow apartment); Crane, 814 F.2d at 760 ("[T]he claims in suit, libel and 'false light,' are the kind in which the injury, foreseeably, is felt with greatest force in the place where the plaintiff lives.") (citing Calder v. Jones, 465 U.S. 783, 789-90 (1984) and Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 780 (1984)); E.M. v. Shady Grove Reprod. Sci. Ctr. P.C., No. CV 19-657 (RC), 2020 WL 6158575, at *8 (D.D.C. Oct. 21, 2020) (finding for choice of law analysis that "[a]llegedly E.M. herself was injured, so the injury occurred in E.M.'s location, not in the location of a [fertility treatment] procedure she was unable to get.").

Second, personal jurisdiction under subsection (a)(4) fails because there are no allegations supporting the necessary "plus factors:" that Boston Defendants regularly do/solicit

business in D.C., engage in a persistent course of conduct in D.C., or derive substantial revenue

from goods consumed or services rendered in D.C. Rather, Doe alleges only that Boston

Defendants directed negative references/information to D.C.-based employers and a Washington

Post reporter on <u>at most</u> five occasions since March 2017.<u>7/</u> <u>See</u> Exh. A at 1. D.C.'s courts have

long-held that the mere act of communicating by mail, telephone and/or email with persons

located in D.C. falls far short of evidence of "doing business" there. <u>See</u>, <u>e.g.</u>, <u>Thompson Hine,</u>

<u>LLP v. Taieb</u>, 734 F.3d 1187, 1192 (D.C. Cir. 2013) (finding that "at least ten emails" sent by

non-resident defendant to a D.C. law firm retained by defendant did not establish basis for

personal jurisdiction); <u>FC Inv. Grp.</u>, 529 F.3d at 1095 n. 9 (holding that even regular calls from

the London defendant to D.C. were insufficient to establish long arm jurisdiction under sections

(a)(1) and (a)(4)); <u>Tavoulareas v. Comnas</u>, 720 F.2d 192, 193-94 (D.C. Cir. 1983) (affirming

dismissal for lack of personal jurisdiction where non-resident defendant placed phone calls from

outside the District to individuals within the District); <u>Nuevos Destinos, LLC v. Peck</u>, No. 15-

CV-1846 (EGS), 2019 WL 78780, at *11 (D.D.C. Jan. 2, 2019) ("Sending emails or making

phone calls to District residents does not constitute conducting 'regular business' or engaging in

a 'persistent course of conduct' in the District of Columbia."); <u>Naegele v. Albers</u>, 110 F. Supp.

3d 126, 153 (D.D.C. 2015) (finding that making calls and sending emails to plaintiffs located in

D.C. "do not, standing alone, constitute a persistent course of conduct" pursuant to the long-

---

<u>7/</u> This construction gives Doe <u>every</u> benefit of <u>every</u> doubt, which, given her Complaint's
utter lack of specificity with regard to timing, the Court need not grant. Doe obviously knows
<u>when</u> she applied for D.C.-based jobs, <u>when</u> her applications were rejected and, therefore, <u>when</u>
Boston Defendants allegedly gave the negative references on which her complaint is based.
Under these circumstances, Doe's total failure to plead timing should not work in her favor. <u>See,</u>
<u>e.g.</u>, <u>Kabakova v. Office of Architect of Capitol</u>, No. CV 19-1276 (BAH), 2020 WL 1866003, at
*18 (D.D.C. Apr. 14, 2020) (dismissing harassment claim because of, among other reasons,
complaint's "lack of specificity about the timeline and the frequency of the contact" and the fact
that "the allegations have no dates attached…and the complaint also makes no attempt to
quantify the number of occasions on which inappropriate touching occurred").

arm statute); <u>Houlahan v. Brown</u>, 979 F. Supp. 2d 86, 89-90 (D.D.C. 2013) (concluding that email sent to D.C. resident does not constitute a persistent course of conduct in D.C.).

Third, the Complaint fails under subsection (a)(4) because the limited (at most five) contacts the Complaint arguably identifies are not "separate from and in addition to" her alleged injury as required for personal jurisdiction thereunder. <u>See</u> <u>Crane</u>, 814 F.2d at 762. Rather, Boston Defendants' alleged contacts with D.C. are one and the same with the cause of her alleged injury. This fact alone dooms personal jurisdiction under subsection (a)(4).

Given Doe's clear reliance on subsection (a)(4), the Court should reject out of hand any argument for personal jurisdiction under any of § 13-423(a)'s other subsections. There are, for example, no allegations – nor can there be – that Boston Defendants: transact business in D.C. (subsection (a)(1)); contract to supply services in D.C. (subsection (a)(2)); caused tortious injury in D.C. by act or omission in D.C. (subsection (a)(3)); or have an interest in using or possessing real property in D.C. (subsection (a)(5)). Indeed, subsection (a)(1)'s "transacting business" provision requires that "a plaintiff must show that a defendant has intentionally engaged in a '*commercial or business-related activity*' that was directed at D.C. residents." <u>Capel v. Capel</u>, 272 F. Supp. 3d 33, 39 (D.D.C. 2017) (quoting <u>Holder v. Haarmann & Reimer Corp.</u>, 779 A.2d 264, 270-71 (D.C. 2001) (emphasis in original)). Municipal entities and their employees, Boston Defendants do not engage in <u>any</u> commercial activity, whether directed at D.C. residents or otherwise.

And, were Doe to attempt to argue it, subsection (a)(3) does not apply for the same reasons as subsection (a)(4) – Doe has not alleged a "tortious injury in the District" that, based on communications transmitted into D.C., was caused by "an act or omission in the District." <u>See, e.g.,</u> <u>Forras v. Rauf</u>, 812 F.3d 1102, 1107 (D.C. Cir. 2016) (holding "publishing defamatory

11

or otherwise tortious statements within the District that were made outside the District falls short of what subsection (a)(3) requires"); Helmer, 393 F.3d at 209 (finding "unpersuasive" plaintiff's argument that "merely the intentional direction of tortious conduct into a state is sufficient to confer personal jurisdiction without other contacts" under subsection (a)(3)); Tavoulareas, 720 F.2d at 194 (finding making calls to the District does not constitute acts "in the District" pursuant to subsection (a)(3)).

In short, Doe's threadbare Complaint allegations that Boston Defendants "directed" negative information to potential D.C. employers on a handful of occasions since March 2017 is woefully insufficient to establish personal jurisdiction under D.C.'s long-arm statute. The Court should therefore dismiss Doe's Complaint in full.

### c. Personal jurisdiction over Boston Defendants would not comport with the requirements of constitutional due process.

"Even when the literal terms of the long-arm statute have been satisfied, a plaintiff must still show that the exercise of personal jurisdiction is within the permissible bounds of the Due Process Clause." GTE New Media Servs. Inc., 199 F.3d at 1347. To satisfy this burden, "a plaintiff must show 'minimum contacts' between the defendant and the forum establishing that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting Int'l Shoe Co., 326 U.S. at 316). "If the plaintiff relies on a theory of specific jurisdiction, this minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation." IMAPizza, LLC v. At Pizza Ltd., 334 F. Supp. 3d 95, 113 (D.D.C. 2018) (quotation omitted). This analysis "looks to the defendant's contacts with the forum State itself, not [simply] the defendant's contacts with persons who reside there." Walden v. Fiore, 571 U.S. 277, 285 (2014).

In light of Doe's allegations – a handful of communications directed into D.C. since March 2017 – it simply defies credulity to contend that Boston Defendants thereby "purposefully availed" themselves of the privilege of conducting activities within D.C., thus invoking the "benefits and protections of its laws." Asahi Metal Indus. Co., 480 U.S. at 109. Having no independent connection or relationship with D.C. whatsoever, there is no basis for asserting that Boston Defendants' D.C.-based "activities" should have caused them to "reasonably anticipate being haled into court there" as is necessary for constitutional due process. World-Wide Volkswagen Corp., 444 U.S. at 297.

Neither are there facts supporting the necessary inference that Boston Defendants' actions were intentionally directed at D.C. itself. See Walden, 571 U.S. at 285. Rather, it was Doe who caused Boston Defendants to communicate with prospective employers in D.C., applying for jobs there and providing releases so that Boston Defendants could and would respond to the requests for information about her. See Exh. A at 4.

Indeed, that Doe was even applying for jobs in D.C. – thereby requesting that BPD provide prospective employers there information about her – was based on her unilateral decision to move Northern Virginia after resigning from BPD, not some intentional goal of Boston Defendants to establish contacts with D.C. See, e.g., Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 417 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."); Walden, 571 U.S. at 289 (rejecting an "approach to the 'minimum contacts' analysis [that] impermissibly allow[ed] a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis"); Fiorentine v. Sarton Puerto Rico, LLC, No. CV 19-3424 (CKK), 2020 WL 5095486, at *6-7 (D.D.C. Aug. 29, 2020)

13

("...Defendant's forum contacts arose from a Puerto Rican relationship, which only touched the District of Columbia by virtue of [Plaintiff's] unilateral decision to move to this jurisdiction *after* the relationship with Defendant was formed.") (emphasis in original). As in <u>Fiorentine</u>, "substantiating an exercise of personal jurisdiction on such an unpredictable connection with the District of Columbia is far too attenuated to satisfy the 'notions of fair play and substantial justice' underwriting constitutional due process." <u>Id</u>. (citing <u>GTE New Media</u>, 199 F.3d at 1347).

Doe's utter failure to establish Boston Defendants' minimum contacts with D.C. such that facing suit there would comport with constitutional due process, the Court should dismiss the Complaint for lack of personal jurisdiction under Rule 12(b)(2).

## B. The Case Should Be Dismissed For Improper Venue Or, Alternatively, Transferred to Massachusetts.

### 1. Venue is improper.

The Court should also dismiss this case under Fed. R. Civ. 12(b)(3) for improper venue. When presented with a Rule 12(b)(3) motion, the Court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." <u>James v. Verizon Servs. Corp.</u>, 639 F. Supp. 2d 9, 11 (D.D.C. 2009). "The court, however, need not accept the plaintiff's legal conclusions as true." <u>Id</u>. "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of establishing that venue is proper." <u>Freeman v. Fallin</u>, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." <u>Cherdak v. Am. Arbitration Ass'n Inc.</u>, 443 F. Supp. 3d 134, 143 (D.D.C. 2020) (quoting <u>Williams v. GEICO Corp.</u>, 792 F. Supp. 2d 58, 62 (D.D.C. 2011)).

As to venue, Doe alleges only that:

14

> Venue is proper because Plaintiff worked in the District of Columbia and applied for jobs in the District. Defendants' actions, which form the basis of this claim, were directed at D.C. employers and prevented Ms. Doe from filling positions with agencies that are based in D.C.

Complaint ¶ 13.

> Pursuant to the federal venue statute, a civil action may be brought in:

> (1) a judicial district is which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Under each of these three statutory alternatives, D.C. is an improper venue. Most clearly, no party who is a natural person – neither Doe nor the unnamed Individual BPD Officers – reside in, or have ever resided in, D.C. See 28 U.S.C. § 1391(b)(1). And, as to City of Boston and BPD, a defendant that is not a natural person resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As explained, the Court does not have personal jurisdiction over the City of Boston and BPD, which, accordingly, do not reside in D.C. Because none of the parties to this lawsuit reside there, D.C. is not a proper venue under § 1391(b)(1).

Second, a substantial part of the events or omissions giving rise to Doe's claims simply did not occur in D.C. See 28 U.S.C. § 1391(b)(2). Rather, all of Boston Defendants' alleged actions – while allegedly "directed" into D.C. – indisputably originated from, and therefore occurred in, Massachusetts, where Boston Defendants were at all times located. As described, communicating by telephone, mail or emails with persons in D.C. does not constitute acts occurring "in D.C." See, e.g., Forras, 812 F.3d at 1107; Thompson Hine, LLP, 734 F.3d at 1192;

Helmer, 393 F.3d at 209; Tavoulareas, 720 F.2d at 194. Accordingly, D.C. is not a proper venue under § 1391(b)(2).

Third, the final avenue for venue applies only "if there is no district in which an action may otherwise be brought." 28 U.S.C. § 1391(b)(3); see also Saudi v. Northrop Grumman Corp., 273 F. Supp. 2d 101, 104-05 (D.D.C. 2003) (explaining venue improper under § 1391(b)(3) because of other districts where action could have been brought). Here, pursuant to § 1391(b)(1), this action could be brought in the U.S. District Court for the District of Massachusetts, where Boston Defendants all reside and the court would have personal jurisdiction over them. Massachusetts is also a proper forum under § 1391(b)(2), because that is where a substantial part of the events giving rise to Doe's claims occurred. As there is at least one other district where venue is proper, Doe cannot assert venue in D.C. under § 1391(b)(3).

For these reasons, Does has failed to make any factual allegations showing that this Court is a proper venue for her lawsuit under § 1391(b). The Court should therefore dismiss the case in full.

### 2. Alternatively, the Court should transfer the case to Massachusetts.

In the alternative, the Court should transfer this case to the U.S. District Court for the District of Massachusetts. Pursuant to 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."

Determining whether transfer is appropriate pursuant to 28 U.S.C. § 1404(a) calls for a two-part inquiry. The Court must first ask whether the transferee forum is one where the action "might have been brought" originally. Id. Second, the Court must consider whether private and public interest factors weigh in favor of transfer. See Lentz v. Eli Lilly & Co., 464 F.Supp.2d 35,

37 (D.D.C.2006). In considering whether a transfer would be proper, the Court may consider

"private interest" factors, including:

> (1) the plaintiff's choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

Greater Yellowstone Coalition v. Bosworth, 180 F.Supp.2d 124, 127 (D.D.C. 2001). The Court

must also weigh "public interest" considerations such as:

> (1) the transferee court's familiarity with the governing laws and the pendency of related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

Id. at 128.

Section 1404(a) vests discretion in the district court to conduct an "individualized, case-

by-case" analysis. Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988). Although the

"plaintiff's choice of forum is ordinarily entitled to deference," Nat'l Ass'n of Home Builders v.

U.S. Envt'l Prot. Agency, 675 F.Supp.2d 173, 179 (D.D.C. 2009) (citation omitted), "less

deference is warranted where[, as here,] the chosen forum is not plaintiff's home forum." Marks

v. Torres, 576 F.Supp.2d 107, 111 (D.D.C. 2008).

This action might have been brought originally in Massachusetts because Boston

Defendants are residents thereof. As such, the Court must consider whether private and public

interest factors weigh in favor of transfer. And these factors weigh heavily in favor of

Massachusetts.

Most clearly, despite the fact that Doe chose this forum, her lawsuit's connections to D.C.

are attenuated at best. Indeed, no party to this suit – not even Doe – resides in, or has ever

resided in, D.C. All actions of Boston Defendants about which Doe complains were undertaken

in Massachusetts. And, by their very nature, the Boston Defendants – a municipality and its employees – are inherently tied to and part of its Massachusetts location. It simply seems wrong that a city should be forced defend itself in a court hundreds of miles from the state of its municipal incorporation absent some dramatic, clear activity – plainly lacking here – that would affirmatively connect it to that jurisdiction.

Moreover, the convenience of the parties strongly favors Massachusetts. Boston Defendants are located in Massachusetts and Doe now resides in Rhode Island, the entirety of which lies within approximately 100 miles of federal district court in Boston. Cf. Fed. R. Civ. P. 45(c)(1)(A) (establishing presumptively reasonable 100-mile subpoena power). Indeed, the main witnesses to the case – particularly the alleged purveyors of Doe's complained-about negative references – are located in Massachusetts and would be much more readily available for trial in Boston than in D.C. Courts in this Circuit have repeatedly recognized that when the vast majority of essential fact witnesses are within the subpoena power of a proposed district, it favors transfer to that district because it will be more convenient for fact witnesses to appear. See Dean v. Eli Lilly & Co., 515 F.Supp.2d 18, 22-23 (D.D.C. 2007); see also Id. at 377 ("The convenience of the witnesses has been described as 'the most critical factor' to examine when deciding a motion to transfer.") (quoting Pyrocap Int'l Corp. v. Ford Motor Co., 259 F.Supp.2d 92, 97 (D.D.C. 2003)).

The parties' relationship, moreover, is based entirely on Doe's Boston-based employment with BPD. And, again, the case only involves D.C. because Doe unilaterally chose to move to Northern Virginia and/or apply for jobs in D.C. (and for which she provided BPD her explicit permission to respond). See Exh. A at 4. Finally, the vast majority of the documentary proof

related to Doe's claim is located in Boston, within the BPD's custody and control, another factor weighing in Massachusetts' favor.

In short, the evidence favoring a transfer from this Court to the U.S. District Court of the District of Massachusetts is overwhelming. To the extent that it does not dismiss this case outright, the Court should transfer it under 28 U.S.C. § 1404(a).

## IV.    **Conclusion.**

For all of the foregoing reasons, the Court should dismiss the Complaint in full for lack of personal jurisdiction and improper venue. Alternatively, the Court should transfer the case to the U.S. District Court for the District of Massachusetts, by far the most appropriate venue for this lawsuit, should it move forward.

Respectfully submitted,

CITY OF BOSTON, BOSTON POLICE
DEPARMENT and INDIVIDUAL OFFICERS,


/s/Kathleen Williams
Frank C. Morris (D.C. Bar No. 211482)
 fmorris@ebglaw.com
Kathleen Williams (D.C. Bar No. 334888)
 kwiliams@ebglaw.com
1227 25th St., N.W., Suite 700
Washington, D.C. 20037
(212) 861-0900
*Local Counsel for Defendants*

Kay H. Hodge (admitted pro hac vice)
 khodge@scmllp.com
John M. Simon (admitted pro hac vice)
 jsimon@scmllp.com
Stoneman, Chandler & Miller LLP
99 High Street
Boston, MA 02110
(617) 542-6789
*Attorneys for Defendants*

Dated:  February 25, 2021


<u>Certificate of Service</u>

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent by first class mail, postage prepaid, to those indicated as non-registered participants on February 25, 2021.


    /s/Kathleen Williams
    Kathleen Williams