UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil Action No. 1:21-cv-11062-IT |
| | * |
| CITY OF BOSTON, BOSTON POLICE | * |
| DEPARTMENT, and INDIVIDUAL | * |
| OFFICERS, in their official capacities, | * |
| | * |
| Defendants. | * |

MEMORANDUM & ORDER

March 15, 2022

TALWANI, D.J.

Plaintiff Jane Doe brings this action against the City of Boston, the Boston Police Department ("BPD"),[1] and unnamed BPD officers, in their official capacities. Pending before the court is Defendants' Motion to Dismiss [Doc. No. 30] for failure to state a claim. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.   Background

   A.   *Factual Allegations*

As alleged in the Complaint [Doc. No. 3], the facts are as follows. Doe began her career with the BPD in 2007. Compl. ¶ 16 [Doc. No. 3]. At that time, she was one of a "few women of Asian descent" within the BPD, which harbored a "pervasive culture of sexism." Id. at ¶¶ 16, 18. Doe alleges that she was told that she "must be either a bitch or a lesbian" and that she had to "be

---

[1] The BPD is a municipal department and is not an entity that can be sued. This memorandum therefore refers to Boston and BPD collectively as "Boston."

careful" around her male colleagues. Id. at ¶ 17. Despite this, Doe did well at the BPD and was promoted to the Special Operations team in September 2009. Id. at ¶ 18.

In August 2009, while she was awaiting transfer to Special Operations, Doe attended a firearms competition with other officers. Id. at ¶ 20. Doe alleges that, during the competition, another BPD officer violently and repeatedly raped her. Id. at ¶ 21. After returning to Boston, Doe reported the alleged assault, as well as subsequent assaults, threats, and harassment, to her union representative, who then provided the information to Doe's supervisors at the BPD. Id. at ¶ 22. Immediately thereafter, Doe's supervisors instructed her to stay home and required her to use her paid vacation and sick leave. Id. at ¶ 24.

Doe alleges that investigators from the BPD's Sexual Assault Unit reviewed her allegations and found no evidence contradicting her claims. Id. at ¶ 32. Nevertheless, the investigators warned her not to continue to seek justice and told her that proceeding with her claim would be futile and would bring shame on her family. Id. at ¶ 26. The BPD also required Doe to visit a BPD-employed psychiatrist, who asked inappropriate questions about her ethnicity and motivations to be a police officer. Id. at ¶ 27. Despite Doe's obtaining clearance to return to work from three different medical professionals, the BPD did not allow her to return to work for nearly a year. Id. at ¶¶ 27, 29. Meanwhile, the officer who allegedly raped Doe was permitted to return to work less than three months later. Id. at ¶ 28. In the following months, the alleged rapist frequently drove his vehicle to Doe's street and parked outside her house in an attempt to intimidate her. Id. at ¶ 30.

In 2010, Doe began to apply for other jobs in law enforcement because the BPD had transferred her from Special Operations to positions less desirable to her. Id. at ¶ 33-34. She also sought employment outside of Boston because the alleged rapist continued to physically threaten

2

her. Id. at ¶ 35. She allegedly submitted 135 job applications, including 111 applications to law enforcement agencies. Id. at ¶ 37. Doe finally left the BPD in 2014 and moved to Northern Virginia, where she began employment in the Washington D.C. metropolitan area. Id. at ¶ 7. In August 2020, Doe moved to Rhode Island, where she resides today. Id. at ¶ 1.

Doe alleges that since 2010, the BPD has purposefully thwarted her efforts to secure a new law enforcement job in retaliation for her rape allegations. Specifically, Doe contends that the BPD failed to respond to reference requests or provided false information to place Doe in a negative light. Id. at ¶¶ 38-39. For example, Doe received a tentative offer from the Department of Homeland Security in 2017, but the offer was withdrawn after the BPD allegedly provided false information that Doe had violated sixty-five rules, ranging from untruthfulness to violating orders, while employed by the BPD. Id. at ¶ 41. On another occasion, Doe successfully obtained employment in Washington D.C., but the BPD allegedly provided false information to a Washington Post reporter that Doe had "essentially been terminated" from the BPD, which led the reporter to inform Doe's prospective employer, jeopardizing her employment. Id. at ¶ 43.

B.      *State Court Litigation*

In May 2016, Doe filed a case in Suffolk Superior Court against the BPD, two named BPD officers, and unnamed BPD officers alleging discrimination under Mass. Gen. Laws ch. 151B, violation of the Massachusetts civil rights act, interference with advantageous contractual relations, defamation, retaliation in violation of Title VII and chapter 151B, and intentional and negligent outrage. Compl., Doe v. Boston Police Dep't, et al, No. 1684CV01434 (Mass. Super. May 5, 2016). Among other things, the complaint alleged that Doe had been "subjected to humiliating racial derogations," including "a psychiatrist who repeatedly called her Korean and questioned why she wanted to be a police officer" due to her ethnicity and gender; demoted due

to her rape allegations; prevented from obtaining employment elsewhere due to "derogatory and defamatory statements" made by the defendants "leading directly to the refusal of an out of state police department to hire her in October of 2013 and on divers occasions since that time." Id. The action was dismissed after Doe failed to effect timely service. Order, Doe v. Boston Police Dep't, et al, No. 1684CV01434 (Mass. Super. Jan. 20, 2017). Doe did not file for reconsideration or appeal after entry of final judgment.

On February 2, 2017, Doe filed a new action, identical to the 2016 action. Compl., Doe v. Boston Police Dep't, et al, No. 1784CV00350 (Mass. Super. Feb. 2, 2017). The defendants moved to dismiss the action on the ground that Doe's complaint had already been adjudicated on the merits in the 2016 action. See Mem. & Order, Doe v. Boston Police Dep't, et al, No. 1784CV00350 (Mass. Super. Feb. 6, 2018), at *3. Doe argued that the 2017 action should be permitted to proceed because the dismissal in 2016 was a matter of form, not substance. Id. at 2. The Superior Court judge dismissed the action, concluding that under Mass. R. Civ. P. 41(b)(3), "any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits," such that dismissal of the 2016 action was a dismissal with prejudice. Id. at 3. Doe appealed the Superior Court's dismissal of the action, and the appeal was denied for want of prosecution. Order, Doe v. Boston Police Dep't, et al, No. 1784CV00350 (Mass. Super. Mar. 10, 2022).

C. *Present Action*

Doe initiated this action in the United States District Court for the District of Columbia on October 19, 2020, asserting three claims: retaliation in violation of Title VII (Count I), violation of her First Amendment right to be free from retaliation (Count II), and intentional

infliction of emotional distress (Count III). Compl. [Doc. No. 3]. Defendants filed a Motion to Dismiss [Doc. No. 14], seeking dismissal for lack of personal jurisdiction, for improper venue, or, alternatively, to transfer this action to the District of Massachusetts under 28 U.S.C. § 1404(a). The District Judge transferred the matter to this district, concluding that the court lacked personal jurisdiction over Defendants. Defendants thereafter filed the pending Motion to Dismiss [Doc. No. 30] for failure to state a claim.

## II.     Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"While most Rule 12(b)(6) motions are premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense." Nisselson, 469 F.3d at 150. A court may allow a Rule 12(b)(6) motion based on an affirmative defense if "(i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those

facts suffice to establish the affirmative defense with certitude." Id. (quoting Rodi v. S. New Engl. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004)).

### III.     Discussion

####    A.    *Claim Preclusion*

Defendants argue that Doe's claims are precluded where the claims were already raised (or could have been raised) in her May 2016 and February 2017 state court actions. Doe counters that her claims are, in part, related to actions taken by Defendants in March 2017 or later and that these claims cannot be precluded where Doe filed her last Superior Court action in February 2017. She also argues as to pre-February 2017 claims that she has not had a full and fair opportunity to litigate those claims and that the court should decline to apply claim preclusion based on public policy considerations.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). The court must therefore "look to state law to determine the preclusive effect of a prior state court judgment." Patterson v. Patterson, 306 F.3d 1156, 1158 (1st Cir. 2002) (quoting In re Spigel, 260 F.3d 27, 33 (1st Cir. 2001)).

Under Massachusetts law, "[c]laim preclusion makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or could have been adjudicated in the action." Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E.2d 628 (2005) (quoting O'Neill v. City Manager of Cambridge, 428 Mass. 257, 259, 700 N.E.2d 530 (1998)). "The invocation of claim preclusion requires three elements: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of

action, and (3) prior final judgment on the merits.'" Id. (quoting DaLuz v. Department of Correction, 434 Mass. 40, 45, 746 N.E.2d 501 (2001)).

 Here, the first element is met as to all adverse actions alleged by Doe where there is no dispute that there is an identity of the parties. The second element is met insofar as Doe is challenging allegedly retaliatory acts that took place prior to Doe's filing of her final Superior Court complaint on February 2, 2017. As to these actions, both the instant complaint and the 2016 and 2017 actions seek redress for the same alleged wrongs, i.e., that in retaliation for Doe's report that she was sexually assaulted by a fellow officer, the BPD provided false information to Doe's prospective employers, thereby preventing or jeopardizing her future employment. See Mackintosh v. Chambers, 285 Mass. 594, 596, 190 N.E. 38 (1934) ("The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction, act, or agreement, and seeks redress for the same wrong").

 As to the third element, the 2016 and 2017 judgments are decisions on the merits. The Superior Court judge explained in dismissing Doe's 2017 complaint that, under Massachusetts law, any dismissal other than one "for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication on the merits." Mem. & Order, Doe v. Boston Police Dep't, et al, No. 1784CV00350 (Mass. Super. Feb. 6, 2018), at *3. The court concluded that the dismissal of Doe's 2016 complaint for failure to effect timely service therefore signified a final judgment on the merits. The Superior Court judgment in the 2017 action was, likewise, a decision on the merits, where the judge concluded that Doe raised no new claims in the 2017 action and allowed the defendants' motions to dismiss pursuant to Mass. R. Civ. P 12(b)(6).

Although the court is sympathetic to Doe's argument that the 2016 dismissal for failure to timely serve was a matter of form, not substance, Doe's recourse, if any, is in the state courts. Under the Rooker-Feldman doctrine, lower federal courts are barred from hearing de facto appeals from state-court judgments. See generally D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); Wilson v. Shumway, 264 F.3d 120 (1st Cir. 2001). The doctrine applies where "the losing party in state court file[s] suit in federal court after the state proceedings [have] ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291 (2005). In short, a federal district court lacks the authority to effectively sit as an appellate court and to disrupt a final judgment from a state court. Id.

Here, Doe is in effect requesting that this court overturn both the Superior Court judgment dismissing her 2016 complaint with prejudice and the later Superior Court decision finding that the 2016 judgment was a final adjudication on the merits under Massachusetts law. The court is not at liberty to revisit these issues.

However, insofar as Doe's claims relate to acts allegedly taken *after* February 2, 2017, they are not precluded. Defendants argue that those claims should be precluded because Doe "plainly knew about them and could have litigated them in [the 2017 Superior Court action]." But "[t]here is no preclusion of a claim that was not mature at the time the first action was *filed*." 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4406, p. 158–59 (3d ed. 2016) (emphasis added). Defendants offer no authority for their suggestion that Doe should have been required to amend her Superior Court complaint to add later-arising claims, and the majority of courts to have considered the issue have determined that there is no such duty. See, e.g., Lundquist v. Rice, 238 F.3d 975, 978 (8th Cir. 2001); Curtis v. Citibank, 226 F.3d 133, 140

(2d Cir. 2000) ("The crucial date is the date the complaint was filed. The plaintiff has no continuing obligation to file amendments to the complaint to stay abreast of subsequent events; plaintiff may simply bring a later suit on those later-arising claims"); Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992); Spiegal v. Cont'l Ill. Nat'l Bank, 790 F.2d 638, 644-46 (7th Cir. 1986). But see Monterey Plaza Hotel Ltd. P'ship v. Local 483, Hotel Employees, 215 F.3d 923, 927-28 (9th Cir. 2000) ("the doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the complaint was filed"). Accordingly, Defendants' Motion to Dismiss [Doc. No. 30] is denied insofar as Doe's claims relate to acts alleged to have occurred after February 2, 2017.

      B.    *Section 1983*

Doe's second claim is brought against Boston pursuant to 42 U.S.C. § 1983 for violation of her First Amendment right to be free from retaliation for her protected speech. Under Monell v. Department of Social Services of City of New York, a municipality may be held liable under section 1983 where an "action pursuant to official municipal policy of some nature causes a constitutional tort." 436 U.S. 658, 691 (1978). To demonstrate municipal liability, a plaintiff must show that (1) the municipality had a custom, policy, or practice; (2) this custom, policy, or practice "amount[ed] to deliberate indifference to the rights of persons with whom the [officers] come into contact"; and (3) the custom, policy, or practice was the direct cause of the alleged constitutional violation. DiRico v. City of Quincy, 404 F.3d 464, 468-69 (1st Cir. 2005) (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)). The custom, practice, or policy must be the "moving force [behind] the constitutional violation." Monell, 436 U.S. at 694.

Doe's Complaint [Doc. No. 3] alleges that on September 25, 2020, "Suffolk County District Attorney Rachael Rollins released a 'Brady' list of 136 law enforcement officers—including fifty-four (54) current or former BPD officers—who have engaged in, or been accused of, misconduct that discounts their credibility as prosecutorial witnesses" and that this "supports a strong inference that the [BPD]'s practice of providing false information is not an individual case but a [d]epartment-wide problem." Compl. ¶¶ 44-45 [Doc. No. 3]. Doe alleges further that, upon information and belief, the unnamed BPD officers "maintained a culture of retaliation against police officers who reported the conduct of other police officers." Id. at ¶ 64. She also alleges that the BPD "maintain[s] a hostile working environment for female police officers," based on a 2019 Boston Globe editorial. Id. at ¶ 67. Such allegations are speculative and conclusory and fail to state claim under Monell. See Twombly, 550 U.S. at 570. Accordingly, Defendants' Motion to Dismiss [Doc. No. 30] is granted as to Doe's section 1983 claim, without prejudice to a timely motion to amend if Doe becomes aware of other facts to support her Monell claim.

   C. *Intentional Infliction of Emotional Distress*

Doe's final claim is for intentional infliction of emotional distress. Defendants argue that the Massachusetts Tort Claims Act ("MTCA") bars Doe's claim. Under the Massachusetts Tort Claims Act ("MTCA"), employers are "immune from intentional tort claims." Spring v. Geriatric Auth. of Holyoke, 394 Mass. 274, 285, 475 N.E.2d 727 (1985); see also Billing v. Martha's Vineyard Pub. Charter Sch., 2014 WL 69867, at *5 (D. Mass. Jan. 8, 2014) (concluding that public employers are immune from suits arising from intentional tort, including invasion of privacy under Mass. Gen. Laws ch. 214, § 1B, pursuant to the MTCA). Insofar as Doe's

10

intentional infliction of emotional distress is brought under Massachusetts law, the claim is barred.

Doe argues that the MTCA does not apply to the extent that her claim is brought under the law of the District of Columbia. The parties have not adequately briefed this issue. Accordingly, Defendants' Motion to Dismiss [Doc. No. 30] is granted as to any claim for intentional infliction of emotional distress under Massachusetts law, and denied without prejudice as to any claim for intentional infliction of emotional distress under the law of the District of Columbia where the alleged conduct occurred after February 2, 2017.

### IV.    Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss [#30] is GRANTED IN PART as to Count II (section 1983) in its entirety and as to Counts I (Title VII) and III (intentional infliction of emotional distress) insofar as they are based on retaliatory actions allegedly taken by Defendants through February 2, 2017. The motion is DENIED IN PART insofar as Counts I and III are based on retaliatory actions allegedly taken by Defendants after that date.

IT IS SO ORDERED

March 15, 2022                                          /s/ Indira Talwani
                                                        United States District Judge